# EXHIBIT 4

# EXHIBIT 4

2007 WL 3333071
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Marla A. SANTOS and
Lawrence E. Santos, Plaintiffs,

v.

FARMERS INSURANCE EXCHANGE, a foreign corporation, and Arron Pieteila and Sarah Pietila d/b/a Arron & Sarah Pietila Agency, Defendants.

No. 07–11229.
|
Nov. 8, 2007.

**Attorneys and Law Firms**

P. David Palmiere, McConnell & Palmiere, Bloomfield Hills, MI, for Plaintiffs.

Timothy Young, Cummings, McClorey, Livonia, MI, Kathleen H. Klaus, Steven M. Wolock, Maddin, Hauser, Southfield, MI, for Defendants.

### *OPINION AND ORDER*

LAWRENCE P. ZATKOFF, United States District Judge.

#### I. INTRODUCTION

*1 This matter is before the Court on Defendant Farmers Insurance Exchange's Motion for Summary Judgment (Dkt.# 9). Plaintiffs filed their response on September 30, 2007, and Defendant has since replied. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's motion is DENIED.

#### II. BACKGROUND

This action arises out of an automobile accident in which Plaintiff Marla Santos (Mrs. Santos) was seriously injured. On April 8, 2001, Mrs. Santos was involved in an automobile accident when another driver veered into oncoming traffic and hit her car head on. Following the accident, Mrs. Santos and her husband, Plaintiff Lawrence Santos (Mr. Santos), settled a lawsuit against the other driver for $25,000, which was the limit of the driver's liability insurance coverage.

Prior to the settlement against the other driver, Plaintiffs, through their counsel, notified Defendant Farmers Insurance Exchange (Farmers) of the loss as Plaintiffs' first-party insurer. Under their No–Fault policy, Plaintiffs could recover up to $500,000. Based on his belief that the No–Fault policy was the only policy that would cover Mrs. Santos's injuries, Mr. Santos only provided his attorney with a copy of that policy. However, Mr. Santos had purchased an umbrella policy of insurance for business purposes prior to Mrs. Santos's accident that, like the No–Fault policy, provided for underinsured motorist coverage up to $1,000,000. Plaintiffs were in possession of a copy of the umbrella policy at all relevant times and had, in fact, renewed the policy in November 2000 for coverage effective from October 28, 2000 to October 28, 2001.

In June and July 2001, Plaintiffs' counsel wrote to Farmers, referencing only the No–Fault policy and its specific policy number. Counsel's letters notified Farmers of Mrs. Santos's injuries and her intention to make a claim for underinsured motorist benefits under the No–Fault policy. On September 25 and October 22, 2001, Farmers responded to counsel's inquiries regarding the No–Fault policy and gave Plaintiffs permission to settle their claim against the at-fault driver. Farmers also informed Plaintiffs that the at-fault driver's policy limits would have to be exhausted before they could pursue underinsured motorist benefits from their No–Fault policy and that any settlement against the at-fault driver would be deducted from the total amount of recovery available from Farmers.

On December 31, 2001, Plaintiffs' counsel informed Farmers of Plaintiffs' settlement with the at-fault driver for $25,000, and further explained:

> The actual damages suffered due to the serious physical injuries sustained by Marla Santos and the loss of consortium to Mr. Santos far

exceed the State Farm policy limit. Accordingly, we believe that we have now satisfied all the prerequisites for an Underinsured Motorist Claim under your policy, and hereby renew that claim. As we understand your UIM limits to be $500,000, and that you are entitled to a credit for State Farm's settlement, our demand at this point is for payment of $475,000.

*2 Pls.' Ex. 1 at 6. Because the parties could not come to an agreement as to the amount of benefits Mrs. Santos was entitled to, Plaintiffs filed a complaint in Oakland County Circuit Court on February 14, 2002, seeking benefits under the No–Fault policy. After Plaintiffs filed suit, their counsel had several conversations with representatives from Farmers in which the representatives allegedly stated that the limit of coverage under the No–Fault policy was $475,000, accounting for the $25,000 settlement. Thereafter, in response to inquiries from Plaintiffs' counsel regarding the No–Fault policy, an insurance adjuster from Farmers wrote to Plaintiffs' counsel stating that she had "received [his] demand for the policy limits of $475,000," and requested more information regarding Mrs. Santos's injuries. Finally, on January 21, 2003, one of Farmers' adjusters interviewed Mrs. Santos about her injuries at which time the adjuster allegedly stated that the limits of the No–Fault policy were $475,000.

Plaintiffs amended their complaint on January 24, 2003, seeking underinsured motorist benefits under the No–Fault policy and adding a claim to compel arbitration under the terms of that policy. Following the amendment, Plaintiffs' counsel again had several conversations with Farmers' representatives in which he claims that the representatives stated that the policy limits were $475,000.

Subsequently, the parties agreed to arbitrate the issue of damages under the No–Fault policy. During this proceeding, Farmers contended that Plaintiffs were entitled to make a claim under the No–Fault policy for $475,000. On August 20, 2003, the arbitration panel awarded Plaintiffs $475,000, and the state court entered a judgment against Farmers in that amount on March 12, 2004. Farmers paid the judgment in full on April 30, 2004, and, in turn, received a satisfaction and release of claims from Plaintiffs.

Plaintiffs now claim that had they pursued benefits under the separate umbrella policy, the arbitration panel would have awarded Mrs. Santos $1,475,000 in benefits. In count I of the current complaint, Plaintiffs allege that Farmers breached the terms of the umbrella policy by not paying benefits under the underinsured motorist provision therein. In count II, Plaintiffs claim that Farmers committed misrepresentations by failing to disclose the existence of the umbrella policy and representing that Plaintiffs' benefits were limited to $475,000. Defendants argue that Plaintiffs' claims in the present case are barred by the earlier state court judgment and have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord *Turner v. City of Taylor,* 412 F.3d 629, 637 (6th Cir.2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### IV. ANALYSIS

*3 Farmers contends that Plaintiffs' claims are barred by principles of res judicata in that they could have been brought in the prior state court action. In response, Plaintiffs argue that res judicata does not apply to this case because Farmers fraudulently concealed the existence of

Plaintiffs' umbrella policy, thereby preventing them from pursuing coverage under that policy in the first action. Further, Plaintiffs contend that res judicata does not apply to their misrepresentation claim against Farmers because that claim could not have been brought as part of the prior proceedings.

## A. Res Judicata

The Full Faith and Credit Act requires the Court to give judgments of the state courts the same full faith and credit they would receive in the state they were issued. *See* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 80–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). In this case, Michigan law determines the preclusive effect of the prior judgment. *McKinley v. City of Mansfield,* 404 F.3d 418, 428 (6th Cir.2005). In Michigan, "[a] second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt.,* 463 Mich. 569, 575, 621 N.W.2d 222 (2001) (quoting *Dart v. Dart,* 460 Mich. 573, 586, 597 N.W.2d 82 (1999)). Michigan applies the doctrine of res judicata broadly. *Id.* Michigan courts "have barred not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* (quoting *Gose v. Monroe Auto Equipment Co.,* 409 Mich. 147, 160–63, 294 N.W.2d 165 (1980)); 6A *Michigan Pleading & Practice* § 42.122 (2d ed. 2007) ("Res judicata applies where the issue ... could have been resolved in the first case if the parties, exercising reasonable diligence, had brought it forward.").

There is no real dispute as to the applicability of res judicata to count I of Plaintiffs' complaint. Both count I of Plaintiffs' complaint and the state court litigation involve the same parties and the same transaction or series of transactions. There is also no argument that Plaintiffs were not provided with a full and fair opportunity to litigate their claims: Plaintiffs filed suit in state court, took advantage of state procedures and rules, amended their complaint to add claims, and fully arbitrated the issue of damages. Lastly, the result of the arbitration proceeding was enforced by a state court judgment, and operates as a judgment on the merits of Plaintiffs' claims. *See Hopkins v. City of Midland,* 158 Mich.App. 361, 370, 404 N.W.2d 744 (1987); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4475.1 ("If an award is enforced by a state-court judgment ... [the Full Faith and Credit Act] requires that the judgment be accorded the preclusion effects recognized by the judgment state."). Therefore, the Court finds that Plaintiffs' contractual claim in count I of their complaint is barred by res judicata unless an exception applies.

*\*4* On the other hand, Plaintiffs' misrepresentation claim in count II of their complaint presents a closer question. To determine whether a claim could have been brought as part of a prior action, Michigan employs a pragmatic, transactional test. *See Adair v. State,* 470 Mich. 105, 124, 680 N.W.2d 386 (2004). Under this approach "the determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in [the former case]." *Id.* at 125, 680 N.W.2d 386. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* [and] whether they form a convenient trial unit ...." *Id.* (quoting 46 Am.Jur.2d, Judgments § 533 at 801) (emphasis in original).

In this case, Plaintiffs' misrepresentation claim does not arise out of the same transaction as their claims under the insurance policies. Although Plaintiffs would not have a misrepresentation claim but for the existence of the policies and their inquiries into coverage, the misrepresentation claim is premised on different facts and legal theories. Whereas Plaintiffs' contract claim involves Mrs. Santos's auto accident, the extent of her injuries, and whether the policies provide coverage for those injuries, their misrepresentation claim involves Farmers' representations to Plaintiffs concerning coverage, the veracity of those representations and Farmers' intent in making them, and Plaintiffs' reliance on those representations. Consequently, each claim involves different proofs and different operative facts. Most importantly, the harm caused by the alleged misrepresentations did not occur until the final judgment was entered in the first cause of action, barring any claim under the umbrella policy. As such, Plaintiffs could not have stated a claim for misrepresentation during the first cause of action. *Mazzola v. Vineyard Homes, Inc.,* 54 Mich.App. 608, 615, 221 N.W.2d 406 (1974) ("The law is clear in this state that for actionable fraud to exist the plaintiff must have suffered damage."); *see also Novak v. Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 688, 599

N.W.2d 546 (1999) (listing damages as a necessary element of a misrepresentation claim). Therefore, the Court finds that Plaintiffs' misrepresentation claim is not barred by res judicata and Farmers' Motion for Summary Judgment must be denied as to count II of Plaintiffs' complaint.

### B. Fraud Exception to Res Judicata

The remaining issue is whether an exception to res judicata applies in this case that would preclude the judgment in the parties' state court action from barring Plaintiffs' contractual claim in count I of their complaint. The Court finds that such an exception does apply in this case.

The Michigan courts have concluded that "[w]here a judgment on the merits is rendered in favor of a defendant, the plaintiff is precluded from maintaining the same cause of action on a new ground for relief except where the defendant's fraud or misrepresentation prevented the plaintiff from presenting the new ground for relief in the prior action." *Cramer v. Metropolitan Savings Assoc.,* 125 Mich.App. 664, 671, 337 N.W.2d 264 (1983) (citing *Prawdzik v. Heidema Bros., Inc.,* 352 Mich. 102, 89 N.W.2d 523 (1958)); *see also Sprague v. Guhagiar,* 213 Mich.App. 310, 314, 539 N.W.2d 587 (1995) (stating that Michigan's fraud exception to res judicata applies to fraud that actually prevents a losing party from having an adversary trial on a significant issue); 6A *Michigan Pleading & Practice* § 42:119 ("The fraud exception to res judicata is narrowly drawn" and pertains only to "fraud that actually prevents the losing party from having an adversarial trial on a significant issue."). Michigan courts refer to this type of fraud as extrinsic fraud, or fraud that is collateral to issues actually tried in the former action. *See Sprague,* 213 Mich.App. at 313, 539 N.W.2d 587. This type of fraud is to be distinguished from intrinsic fraud, which does not avoid the application of res judicata. *See id.* at 314, 539 N.W.2d 587. Examples of intrinsic fraud include perjury, fraud in inducing a settlement, or discovery fraud. *Id.* The reason intrinsic fraud does not provide grounds for a collateral attack on a former judgment is that the trial procedures in the prior action and the adversarial process itself adequately protect the parties' interests in a just result. The danger of extrinsic fraud, on the other hand, cannot be avoided by relying on the adversarial process because, by its very nature, extrinsic fraud prevents that process from actually occurring.

*5 The court finds that the fraud alleged in this case is extrinsic fraud and that it actually prevented Plaintiffs' from bringing their umbrella policy claim in the prior lawsuit. Prior to the first lawsuit, Plaintiffs adequately notified Farmers that they would be seeking insurance coverage for Mrs. Santos's loss. Additionally, through correspondence with Plaintiffs' counsel, Farmers was aware that Plaintiffs felt the benefits available under the No–Fault policy would not be adequate to cover the damages resulting from Mrs. Santos's accident. Farmers was also aware that Plaintiffs' were insured under the umbrella policy, as it was the company that issued the policy. Finally, Farmers was aware that Plaintiffs were in the dark about the second layer of insurance benefits in the umbrella policy: the fact that Farmers knew about the umbrella policy and Plaintiffs' belief that the No–Fault benefits were inadequate, coupled with the fact that Plaintiffs consistently sought benefits only under the No–Fault policy, should have alerted Farmers of Plaintiffs' ignorance as to the additional coverage. Moreover, despite its knowledge of the above circumstances, Farmers continually represented that Plaintiffs' recovery was limited to $475,000, which was affirmatively misleading in light of Plaintiffs' belief that the No–Fault policy was the only policy that provided for benefits: these representations created the impression that no other recovery could be possible, which was not true. Consequently, Farmers' failure to disclose the fact of underinsured motorist benefits to Plaintiffs under these circumstances constituted a concealment of facts that actually prevented Plaintiffs from bringing their current claim in the original suit. As such, Farmers cannot be allowed to invoke the doctrine of res judicata in order to avoid its obligation to Plaintiffs that it deliberately failed to disclose. *See Courtney v. Feldstein,* 147 Mich.App. 70, 74, 382 N.W.2d 734 (1985) ( "[T]he principles of res judicata may not be invoked to sustain fraud."). Accordingly, the Court concludes that the fraud exception to res judicata applies, and that Plaintiffs' claim in count I of their complaint is not barred. Therefore, Farmers' Motion for Summary Judgment is denied as to count I of Plaintiffs' complaint.

### V. CONCLUSION

Based on the foregoing analysis,

IT IS ORDERED that Defendant Farmers' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3333071

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.